3, 10, 07, 8, 1, people of the state of Illinois, Appalachia, Carrigan, Hennepin v. Cindy Sweeney, appellant Tom Corrales Mr. Corrales Good morning your honor, may it please the court, counsel, I'm Tom Corrales and I represent the defendant Cindy Sweeney Ms. Sweeney has brought this appeal from a sentence that was imposed in April of 2010 which committed her to the Department of Corrections for a term of 6 years on her class 4 felony conviction of driving while licensed suspended. As of today Ms. Sweeney is confined at the Dwight Correctional Center and she has less than a year remaining on her sentence. Back in June of this year this court denied a motion for bond that I filed at a time when only the opening brief had been filed in this case. More recently on October 31st this court denied the renewed motion for bond that I filed in an attempt to avoid a mootness result should the defendant be granted relief from her sentence in this case. And this case has been going on now since May of 2003. That's when the complaint for the driving while licensed suspended offense was filed in Willow County. The first date on which a disposition was obtained in this case was August 26, 2004 and that's the date that I'll be focusing my attention and appeal. I think it would be helpful to go over a little bit of the history of what happened beginning with the August 2004 combined plea and sentencing hearing. And at that hearing the trial judge was Judge Shoenstedt and he indicated that the defendant should get one final chance to rehabilitate herself outside of the Department of Corrections but that if she failed she would serve a maximum 6 year extended term of imprisonment in the Department of Corrections. And the defendant agreed to that package and pled guilty on that date in August 2004. The package therefore included the immediate imposition of the 6 year maximum sentence as well as a recognizance bond that the defendant would be permitted to remain free under and a stay of the execution of the court's sentence for a period of time which would not exceed 30 months. The execution of the, or the stay of the execution of the sentence was noted on the formal judgment order and another order was a separate free form order was also entered on August 26th that stated that this prison sentence could be subject to a motion to vacate up until the end of the 30 months that it would potentially be in effect. Now the defendant was released following the date of that guilty plea and she began biweekly reporting to the judge providing a urine test to assess whether she had been using drugs each time. And those biweekly appearances continued until the end of October of 2004. At that time, Judge Showenstead allowed the defendant to spread out her reporting over a monthly basis and she reported on a monthly basis and provided clean drug Mr. Corrales, were those appearances before the judge, were those in court? Yes, there's transcripts for a great number of them. Was the state present? Yes, there was an attorney for the state. Beginning with the October of the first, I think, first appearance in October of 2004, the defendant was in prison and the state was there, but she had no attorney. Correct. And that stayed, the way those hearings, those status report hearings continued all the way up until June of 2008. At the point we get to November of 2007, we're 27 months now past the original sentence and stay sentencing package. The defendant had been reporting monthly and at that point the judge indicated he would kind of loosen the strings and allow the defendant to come on a three month at a time basis. Now the court is aware from the briefs that, as it turned out, the defendant continued to report well in July of 2007, in December of 2007, and then finally on June 12, 2008, all of those appearances were beyond the 30 month stay that was initially set. And I'm not going to go into what happened necessarily unless the court has questions about the June 12, 2008 hearing where the sentence that Judge The briefs cover the subsequent history of the case and the state has not attempted to validate any of the proceedings from June 2008 up until the point when the defendant was sentenced again on a probation violation to the sentence that she is serving today. I think the question that is central and the can be salvaged. And that requires this court to decide whether it is proper or possible under the law to separate out the DOC portion of what happened in August of 2004 from the stay portion of that sentencing package. The state is submitting that only the part that benefited the defendant, which was the stay, was invalid and can be severed and the original six year term of imprisonment can remain intact, whereas the defendant is urging this court to not separate those two aspects of the sentence or the sentencing package out, especially in light of the fact that this was a guilty plea disposition. Now, at the risk of stating the obvious, this sentencing disposition that Judge Schoenstedt fashioned was unusual. It was a maximum extended term sentence for class 4 thriving on suspended license and it was imposed on a guilty plea by the defendant. The only reason that the defendant agreed to a maximum possible sentence to the Department of Corrections was the built in prospect that she may never have to actually serve it. And that was obtained by the lengthy stay of the execution of that sentence. I think we could consider this sort of a carrot that the judge wanted to leave dangling in front of the defendant to urge her to continue in the path of rehabilitating herself. And both the defendant and the state now recognize that the stay part of that sentence was invalid and can't be enforced under the applicable sentencing statutes and the decisions which impact how long an imposed sentence can be suspended or the result of the defendant's guilty plea. It's just not conceivable that the defendant would have agreed to plead guilty if she had known at the time that the carrot was really illusory and that she would end up having to serve the maximum extended term of imprisonment in the end if she didn't complete whatever the conditions the court was putting on her. So the crux of this central issue, which is issue one in the brief that I fought, is whether the stay of execution part of the sentence that was imposed by Judge Schoenstedt could be deemed null and void and all of the subsequent activity in the defendant can be upheld. That's what I think the state's stance is. I think there are three cases that are instructive and probably most helpful to guide this court in addressing this severability and enforceability question that is created by the multiple orders that were entered in 2004. Each of these cases was featured I think could be called the centerpiece of the first issue in the three briefs that are before this court. In the opening brief, the defendant relied on in re te in support of her argument that the entire original sentence has to be vacated and a valid one imposed in its place. The state came back and argues in support of its position that People v. Rosen allows the enforcement of the original 2004 DOC sentence. And in our reply brief we presented the Gregory case from the 4th district in 2008 to illustrate the significance of the fact that the defendant was operating under a specific understanding at the time that she was pleading guilty and that the severance and enforcement of the original DOC sentence would come as a complete surprise to her and would not be possible without providing her first an opportunity to take back and withdraw her guilty plea from 2004. Well let me just, needless to say I hope it's not surprising that this is a really tough case to wrap your brain around. And the original, as I understood it, the original deal was 30, you know, we're going to suspend this sentence, you stay clean for 30 months, and that's it. After the and was the part that I'm not even clear on because it was almost an assumption that we're not going to make it to 30 months because nobody ever really specified how this would be resolved if you successfully report to my court for those 30 months other than the provision that a motion to vacate could be presented to the court. At that point it was unclear whether the court would consider the time that she had been reporting to be a more intensive probation than the type you would report to the probation office and he would credit her with all of that time and just discharge her or he, as it turned out, would put her on a new term of 30 months probation which in effect would give her double the maximum length of possible probation for a class 4 felony. That was uncertain. That's why I think the sentence was really an incomplete sentence. Your position is that the first order was invalid, the second probation order was invalid, and then since that encompassed the term, the prison term, that that went down with the second order, the probation order. Correct. It collapsed. Almost like the old, you know, Fourth Amendment suppression laws, this is all the fruit of a poisoned original sentence in this case. Couldn't vacate a sentence that was void. The only solution is to give her a valid sentence. So what are you proposing as relief? The relief we're asking for is to remand this case and, as in the TE case, order that the judge impose a sentence. That's the only thing. Would she be allowed to withdraw her sentence? Well, after being sentenced on a guilty plea, and that would be the positive, she would have an opportunity under Rule 604 to withdraw her guilty plea. The Gregory case, which comes up in our reply brief in response to the state's suggestion that we can leave the original 2004, but it still needs to be actually ordered in trial court and the new minimum sentence, because that's not the sentence that she's under in the DOC. But we also point out that the Gregory case says that when an invalid or a void sentence in concession is part of a guilty plea, the defendant must be given an opportunity to validate the guilty plea or withdraw it. So that's an alternative request that we've made in our reply brief, but I think you end up at the same point if the defendant is resentenced. She would have an opportunity because she'll have to be admonished that this is a guilty plea sentence and you have the right to move this court to withdraw that plea. Or to reduce the sentence. But if she does that, hypothetically, then I guess probably the thing your client's most interested in if this happens is what does she get credit for against any sentences? Because the maximum sentence on that offense, assuming she either pleads or is found guilty, is still six years maximum, right? Correct. And so, I mean, the thing that really affects your client, right, is what does she get – I don't know if we have to decide that here or not, but it seems to me that's kind of the key thing is what's the limits on the state's ability to keep sentencing her and putting her in jail? Right. In other words, if she went back and was resentenced, she hypothetically could be sentenced as the six-year maximum, right? With credit for not only all the time that she's actually served in custody, but this is the third issue that we raised as an alternative argument, there is the potential under the sentencing statutes to be given credit for time on probation. Now, what's unusual in this case is if the original sentence is being considered void, she really has no time on probation, but yet she's been on probation. I mean, you can't ignore the historical fact that she's made dozens and dozens of reports to the circuit court. She's been on probation, but legally that really didn't happen. Reality, it really did happen. So I think that bodes toward the trial judge taking that into account in a sort of equitable manner and giving the defendant a time to serve this position once she's back to the circuit court. But any sentence would be available. And that would be an issue for the trial judge, not for us now to tell him what he can sentence, what he or she can sentence her client to, and what if offsets ought to be applied to that, credits to that. I believe that would be accurate, considering that the original sentence would be deemed void. That would be left to the trial judge on remand to determine. That's all the time we have. Thank you. If there are no further questions, we request a remand. All right. Thank you, Mr. Strauss. Mr. Ganitovic. Thank you, Mr. Clark. Indeed, this is an unusual case. Everybody here tried to do the right thing to this lady. Unfortunately, it went awry. With respect to my argument, what the state has really propounded here is that when you look at the original sentence or the original offer that was accepted, the original plea was she plead guilty to driving while license was suspended. She would get a maximum extended six-year term. That term would be stayed. Minimus would be stayed for up to 30 months. I want to put that, just the 30 months aside for a moment. The sentencing order then was also one of the sentencing order, this 826 sentencing order, couldn't be vacated if she complied with the recommendation. And she had the whole list of recommendations showing up and being clean, et cetera, et cetera. So the question is, when we talk about the fact that the sentencing order is void, is the sentencing order that was entered beyond what the trial judge was authorized to do? Could the trial judge have sentenced her to six years imprisonment? Yes. Could the trial judge have stayed the minimus? Yes. Could the trial judge have said, if you stay clean, we can take in, have that order vacated, and basically ostensibly putting you on probation? Yes. The only problem with the sentencing order is the fact that it included the business up to 30 months, when in fact, under the statutes, you only have 30 days. Because under the interpretation of, I think it's 1005, or it's 730 S.S. 5-5-81C, you only have 30 days. The Supreme Court has basically made that clear. You only have 30 days within which he could modify his sentence. He couldn't modify his sentence beyond the 30 days. Well, and then, I mean, kind of that insult to injury, after 30 months, sometime after 30 months, then we get this double-secret probation that... Well, what happens is, on June 12th, the prosecutor said, someone finally said, you know, Judge, this case is as old as Fred Flintstone, let's try to get rid of this. Okay, let's do something. And the judge finally looked at his notes and says, oh yeah, hey, you know, so he basically vacated the 826 sentence and imposed probation. But the problem is, he couldn't do it. It was obviously well beyond 30 days. So, in the scheme of all of this, what the people have simply argued is, is that the trial judge acted within his authority, right, in that original sentencing order. The mistake is the time frame within which she could take and, if you will, withdraw, or move to vacate the sentencing order. If this had been done in 30 days, we wouldn't be here. If she had messed up in 30 days, had it been sentenced, we wouldn't be here. It just so happens that, unfortunately, everybody thought that the judge could take and do this, or they would let it go, and because she didn't want to go to prison, that's the whole purpose of the order. It was very clear. There's all kinds of excerpts in the record, but, you know, you know what the alternative is, a misdefendant, et cetera, you know, so she wanted to stay. So, the whole thing is the fact that, in this particular situation, relying upon the Gregory case, indeed, as the defendant points out, and impliedly, and I'm kind of, I'm a little bit, well, I'll get to that in a second, I'm miffed about part of the argument presented by the defendant, but in this particular case, yes, indeed, Gregory talked about the fact that if the sentence is void, then if a part of the plea agreement is void, then the whole sentence is void, and it all has to go back. Except they go on to say, at 883 Northeast 2nd, at 767, the 2nd District has since further expounded upon its decision in here, emphasizing the agreement is only unenforceable if the unenforceable portion is an essential part of the agreement. Whether a term is essential depends on the relative importance of the voided term in the light of the entire agreement between the parties. Now, what was the important part of the agreement? Was it the fact that she was going to be allowed to be free for 30 months, or just the fact that she was going to be allowed to be free? Is the 30 months that was attached to that, is that actually an essential part of the agreement? Now, obviously the state's going to argue that it's not, the defendant's going to argue that it is, and this court will decide whatever it decides, obviously. Well, let me just ask you, because like I said, I'm struggling with this one, okay? But where does a trial judge get the authority after this 30-day period, or certainly after 30 months, to change the sentence? He doesn't. See, the whole thing is, what he did in June is void. Vacating the original sentence is void. Putting her on probation is void. Therefore, the subsequent probation violation file, her subsequent stipulation, and Judge White's subsequent resentencing, all that's void. So the question gets down to, what do we do with this case? Now, as far as I can see, there's really only three options. One is the fact that if you find that the 30 months was indeed an important aspect of the agreement, then technically speaking, the whole plea has to be thrown out. She has to be given an opportunity to plead anew. Secondly, if that 30 months was not necessarily an essential part of the agreement and can be separated out, what do we have? We basically have, and the defendant hasn't really contested this, we have an unexecuted sentence. We have an unexecuted sentence that was issued on 8-26-04. Mind you, she was not on probation, she was not on conditional discharge, she was not in it. She was released on a recognizance bond. She was freed. Let me just ask you this, though. Is there any limit beyond which the state can't go back? In other words, somebody goes out and gets sentenced, and the sentence is legally void, all right? Is there some point beyond which? I mean, in 15 years, if somebody points out that sentence is void, they say, oh, that's right, it's void, there was no sentence, let's go back and have it resentenced. Is there any limit? Well, if we're going on the underlying proposition that this entire sentence of 8-26 is void, in this particular, after 15 years, if the sentence had been executed and the person had already served it, first of all, I don't see anybody really raising that as a potential issue. And I think it kind of ties in a little bit with what you were saying about credit. As far as I understand case law and the statutes, this defendant has actually been serving six years. Granted, she served six years on what was, if you will, a void sentence by Judge White. But she nonetheless has served six years. I would think that under the sentencing credit provisions, she would be given credit for that. I would think that because she's basically incarcerated on this offense. I would certainly think that she would, I don't think the state would take an ask for a new six years. I don't think she would have to serve another six years simply because of this particular situation. I think that it would skew an interpretation of the sentencing provisions to take into this. I think it would be a violation of due process. There's all kinds of problems. And I certainly wouldn't want to be arguing that she's subject to another six year sentence. I'll be honest with you. But I think that, having said that, I think that the original sentence in this case remains unexecuted. And this is not the kind of situation where, you know, we've had cases before where somebody is sentenced... Because you're bifurcating that order. Well... You're saying one part's void, the other... All I'm saying, what I'm saying is... I'm really not saying any part's void. I don't think. I think what I'm really trying to say is the judge just didn't have the authority beyond the 30 days. Just like in Rosen. The judge didn't have the authority. The only difference between Rosen in this case is the fact that this case is a guilty plea. Rosen was a bench trial. And so I'm not really saying anything is really void. It's just that did the judge have the authority to do it? No, he didn't. Now, does that somehow affect the guilty plea? Well, I don't think it does, simply because of the fact that everybody operated as though this plea was proper. She was free, unbind, for the 42 months, I think it is. Between the time of this sentence and the time that... The judge didn't have the authority to make the order. I'm sorry. Next question. How is it not void? I don't think... I don't understand. I guess he had the authority to enter the order. He had the authority. Everything he did, he had the authority to do. The only thing that was improper was the 30 months. But the thing is, I don't think that that makes the sentencing order void as a whole. I don't think... The 30 months is not the important part of the agreement. The important part of the agreement was that she would be released and have that opportunity to prove herself. Which she did. And even though the order was void, did she not still enjoy the benefits of her bargain? She was still free for 42 months. I'm not saying it's a probation order or anything like that. You began this segment of your argument with... You said there were three options here, and I think we've been talking about number two mostly. What is the third one? The third one... The third one... Hopefully I'll do better than... The third one is vacate the plea. Vacate the plea, and basically, I guess you have to take us all over. But the benefit of the bargain argument... Let's take a case where a judge sentences somebody to whatever for whatever, but there's a mandatory add-on, for example. That was the case recently. And they said the trial judge didn't impose that, and it was a plea agreement. Here, I'll plead to this or that. And certainly the defendant in that case enjoyed the benefit of the bargain. It was only going to have to serve so much. They said, Judge, you can't agree to... Even if it benefits the defendant, it's irrelevant. Correct me if I'm wrong, Your Honor, but on the add-ons, isn't it more so the fact that the defendant is not advised of the add-ons? And it's that element. And that's the other thing, by the way, that somewhat distinguishes Gregory. Gregory was not only a failure to admonish, but you see, the sentence in Gregory was actually void, because what he was told was there was a three-year sentencing cap. Okay, that was the cap... Well, it was a mandatory minimum six. So what you have to do is you have to look at the facts, because that dictates... When you're talking about void, you have to determine, you have to look at why are they saying... Are they saying it's void simply because of the fact that the judge couldn't enter the order six months down the road? In these cases, the orders were void because the admonishments were wrong and because the defendant was misled. Now, yes, indeed. Can we say the defendant was misled? I guess you could say the defendant was misled. It was told it could be 30 months. 30 months passed, and it's 42 months. What we're doing here is we're looking at something that happened in August today, and everything that said was going to happen to her or could happen to her in that August order actually happened. Now we're trying to take and say, well, even though it all happened, we have to ignore it, because we have to look with blinders on and say, well, the judge didn't have the authority beyond 30 days to change everything, so that affects everything that happened. If that's this court's decision, that's fine. But I think that what we have is we have an unexecuted sentence. The 30 months is not the important part of it. It's not an essential part of that agreement, the 30 months, the time period. What was essential was her freedom, and her freedom is what she got. It's just unfortunate that all of this happened well beyond the 30 days. Did the judge have the authority? No. I don't think that that renders the sentencing order void. Mr. Genetovic, there's a problem that I'm having procedurally. It seems to me that whatever the trial judge did back in 2004 continued, because there were all these subsequent actions. The state participated in those actions. Why is the 30 days a finality? Don't we have, if nothing else, a series of revestments? And doesn't the trial court in actuality have the authority, just under the facts of this particular case, to have entered that probation order? I never thought about the idea of the revestment doctrine in this particular case. I would have to take and check the case law against what the statute is here, because the Supreme Court has kind of made it clear, and I believe even in Rosen, what the trial judge did could very well have been done with the state present, etc. And yet the Supreme Court, nonetheless, in that case, said the trial judge lost his authority to modify the sentence, because the statute plainly provides that he's only got 30 days. After that, there is no jurisdiction, and although revestment wasn't argued there as here, I would have to sincerely take a look at the case law to see if that was actually applicable under the facts of this particular case. And if so, then basically, if that were indeed the case, then everything is proper. Well, does a revestment involve voluntarily taking part after taking part? And do you think the defendant, when a defendant knows the rule is show up in court on Tuesday, or the sheriff's going to come and get you and deliver you to Dwight, does that voluntarily participate? That would be a question that one would have to take an answer, as well as the fact that the other problem we would then have is the fact that, and frankly, I'm really, I was kind of miffed as to why defense counsel withdrew from the case, but she didn't have counsel either, so that would, I think, kind of add somewhat to the mix here a little bit, as far as any kind of an analysis in the overall scheme of things. But I don't think that we have really asked for anything different than what the defendant has asked for, at least originally in their brief. The only thing we ever took issue with the defendant was how all this was to be labeled. But like I say, all in all, I think the three options are simply vacate the plea, allow the sentence to take and stand, or basically allow the August 26, 2004 order just to be basically executed. Counsel's time. Thank you. Just one more question. Sure. To go back to the revestment, if it applies here, it's the state that's asserting a jurisdictional bar. You're saying that nothing could happen after 30 days, right? So revestment would depend on whether the state continued to voluntarily participate. No, I don't think so. I think it would have to be both parties. I don't think that, I don't think, if I'm not mistaken, I think both parties would have to take and be a part of re-raising a particular issue. If I can ask, when you say a jurisdictional bar. You're saying that the 2008 hearing was void because the trial court couldn't do anything 30 days, more than 30 days after the original sentence was imposed. Right. And the question that I'm raising, and it is a question because I don't know how this operates either, is whether or not by continuing to participate with the original sentence, if both parties didn't continually revest the court with jurisdiction to do whatever it was doing. I think that, first of all, I think the defendant, and I'm sure Mr. Corrales will correct me if I'm wrong, I think the defendant as well as the state have both argued that June 12, 2008 order is void because the trial judge did not have the authority to do that because it was beyond 30 days. Well, Mr. Corrales is also saying because she was not represented by counsel. Well, that would be, again, another issue that I did not feel as though I needed to address considering the stance that the state took with respect to this and the fact that we believe that the original sentencing order is proper. But as far as your question is concerned, I would have to take, and again, I would have to take a look at the case law on revestment in order to really give you any kind of legal opinion on my part. But it does seem to me that a lot of times where revestment comes in a lot of times is the fact that the individual re-raises an issue that the state, rather than walking away from, actually then becomes a participant in. But in this case, because all of these orders were something that just, her appearance in court necessarily had to come up because she had to stay clean because of the fact that in staying clean, she could stay free during this so-called 30-month period. So I don't think that it necessarily, and that would be part of one of my issues that I would have to research, I don't think that her automatic appearance in order to effectuate the conditions of her bond that kept her free necessarily is quote-unquote re-raising an issue or trying to take and revest the court with jurisdiction somehow. That's the issue that I would see in that case. But the state came in and objected to the duration of this entire proceeding and asked the court to do something. That would be correct. So the state essentially was, I don't know, invoking the jurisdiction of the court to make some final decision with regard to this case? The state's attorney had asked, and see, again, what we're doing is we are looking at this with the ability of hindsight to take and say, well, if the trial judge didn't have jurisdiction, which according to the statute he didn't, but the state asked him to do this, has the state asked the judge to invoke his jurisdiction again when at the time everybody thought that the court already had jurisdiction? So I don't know how all that plays into the revestment doctrine as well. It's the fact that through analytical hindsight we can say, yeah, that was a big mistake. That was a boo-boo or that was just something that he couldn't have done, or by doing that he therefore legally did this when at the time everybody thought that the court already had jurisdiction. This is just an ongoing thing. It's just every 60 days, every 90 days, every 120 days it would just pop up on the calendar. And so it's a question of when we're talking jurisdiction, it's a question of whether or not by asking them to do something, did they in fact try to revest something that everybody already thought existed? I don't know the answer to that. I'll top my head. Thank you, Your Honor. Thank you. Do we need some briefing on that? Do we need briefing on that? I'll leave it up to you. Okay. Well, if I can, I'll address Justice McDade's question. And I won't be able to give you case sites, but I think I can maybe put it into perspective. You know, the body of the case law that talks about finality of judgments says that the judge loses jurisdiction 30 days after the sentence is imposed unless there is a motion filed directed at that final judgment and in a trial. That would be a post-trial motion or a post-sentencing motion because the judgment is sentencing. In a guilty plea, we know that that's under 0604. Without such a motion being filed, there are plenty of cases after trials that allow the trial judge to hear and the appellate court to then consider the issues on appeal, a late motion directed against either the sentence or the judgment at trial under the revestment doctrine. But the Wilk case, which deals with the Supreme Court rules, 604, and the admonishments to some extent under 605, is special. And I know there have been cases that have rejected arguments that even the state's participation in a post-guilty plea motion could act to revest jurisdiction. If the defendant misses his deadline for the post-guilty plea, post-sentencing motion after a guilty plea, the revestment rule is not allowed. So the only way I think this could have been stretched out, and this would make it even crazier than the case already is, is if on the 29th or 30th day each time, they vacated the plea and did it all over again and restarted a new 30 days. And you could have done that for 10 consecutive months, I suppose, to get the effect of the 30 months. But once the sentence is imposed, in a guilty plea case, 30 days is a hard and fast rule. And there isn't even a revestment opportunity for defendants who send their post-guilty plea motions from the prison and the prison doesn't postmark them in time. I mean, those cases, the appeals are dismissed and the defendants are going post-conviction. So I think that's the body of law that would restrict any sort of ratification of what happened, even aside from the defendant being without counsel in 2008. If I can, I would like to just talk about the effect of the state's concession that the time frame within which the defendant could come in to ask to vacate the sentence was the problem here, because it went too long. The state agrees that 30 days was the maximum, and the guilty plea was induced by giving her more than that 30 days. The problem is, what is the effect of that? And to the state, it's kind of a, well, too bad. You had your freedom during those 46 months. But under Gregory, the question is, as Mr. Knitovic pointed out, whether that concession that wasn't permissible was an essential part. Now, I believe I made the comment in my opening argument that if the defendant had known that this carrot that the judge was going to let dangle in front of her was just a mirage, that you really aren't going to be able to get out of this. Well, that may, in fact, that might be a little bit of an overstatement, because if she had stayed clean, she would have stayed in. Well, here's the question, and I don't know if this could have happened. It would depend largely on the state's attorney of Will County, who apparently have, in bad for my client, if the judge had vacated Ms. Sweeney's sentence after six months of coming in and providing clean drops and given her a conditional discharge sentence of six months with time served, wouldn't the state have had a mandamus against that order if they really didn't like it? Because, as Justice McKay pointed out, they were continually saying in the early days, judge, just let's ship her, ship her, judge. She's not rehabilitating. So they would have been upset if the judge had done that. And it would have been consistent with the orders that were entered in August of 2004, but also illegal, because the judge would have been acting without jurisdiction to the defendant's benefit. And then you'd have a People X Rel case, like the Rosen case. So even something done to the defendant's benefit would have been void if it wouldn't be on 30 days. And I think the Rosen case just is the opposite, frankly, because it wasn't a guilty plea. I mean, he was given 60 days, and it was stayed so he could appeal, and the appellate court actually dropped the appeal, because no one could come up with a good argument why it was an excessive sentence. That's one minute. Thank you. And then it went back, and that defendant wasn't surprised that he ended up ultimately having to serve the 60 days, because it was a trial. He didn't have anything to resurrect, as the defendant here does, which is her plea of not guilty. Gregory is the case that talks about the guilty plea defendant, who was given an illusory concession during her plea hearing, and it requires a new opportunity to plead. So for either obtaining that or obtaining a remand for a new sentence to be imposed, followed by the admonishments and the opportunity to file post-guilty plea motions, either of those options would be what the defendant would request. Okay. Thank you, Mr. Torello. Thank you both for your arguments here this morning. The matter will be taken under advisement.